# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| JACKIE M. FRAZIER, SR, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CV410-097 |
| | ) |
| MICHAEL ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Jackie M. Frazier, Sr., applied to the Social Security Administration for social security disability benefits. Doc. 1. The SSA awarded him only partial benefits. Doc. 6 at 14-18.[1] It agreed that he was disabled and thus entitled to such benefits after he reached 55, but not at age 52 -- his age on the date for which he sought benefits. *Id.* at 23-25. He thus filed this action in pursuit of that age 52-55 coverage gap. Doc. 1. The Commissioner's decision denying coverage should be **AFFIRMED**.

---

1 For this particular document (the administrative transcript of Frazier's entire proceedings before the SSA), the Court will cite to the paper copy's (doc. 6's) actual pagination. For all others the Court will cite to the "electo-printed" pagination supplied by the Court's CM/ECF docketing software.

## I. STANDARD OF REVIEW

This Court must affirm the Administrative Law Judge's (ALJ's) decision if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. The Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To

determine whether Frazier has met his burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. § 416.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At step one, Frazier must prove that he has not engaged in substantial gainful activity. *Winschel*, 631 F.3d at 1178. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if his impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.*; *see also Phillips v. Barnhart*, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).

If he cannot perform past relevant work, then step five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Phillips*, 357 F.3d at 1239-40. This is a temporary burden-shift; all the Commissioner need show is that, in light of the

claimant's [Residual Functional Capacity (RFC)], age, education and work experience, the claimant 'can make an adjustment to other work' that exists in significant numbers in the national economy." *Jones v. Commissioner of Soc. Sec.*, 2011 WL 1490725 at * 1 (11th Cir. Apr. 19, 2011). At that stage, the RFC is assessed in light of the "full range of employment" benchmark. But any "exertional" and "nonexertional" must be considered. Exertional limitations may

> affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling." [*Phillips v. Barnhart*, 357 F.3d 1232, 1242 n. 11 (11th Cir. 2004)] (citations omitted). If the claimant cannot perform a full range or unlimited types of work at a given level of exertional limitations, "then the ALJ *must* consult a vocational expert to determine whether there are sufficient jobs at the sedentary work level within the national economy that [a claimant] can perform." *Id.*

*Jones v. Astrue*, 2010 WL 3749167 at * 6 (N.D. Fla. Aug. 12, 2010) (emphasis added). Any *non*exertional limitations [2] must also be

---

[2] Nonexertional impairments include pain, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995), and other "medically determinable impairments, such as skin impairments, epilepsy, and impairments of vision, hearing or other senses, postural and manipulative limitations, and environmental restrictions [that] do not limit physical exertion." 20 C.F.R. § 404.1545(d). "Unlike exertional limitations, nonexertional limitations are present at all times in a claimant's life, whether during exertion or rest." *Jerome v. Astrue*, 2009 WL 3757012 at * 11 (D. Vt. Nov. 6, 2009) (quotes and cite omitted).

4

considered:

> "When considering [the claimant's] nonexertional limitations, the ALJ need only determine whether [the claimant's] nonexertional impairments significantly limit her basic work skills." [*Phillips*, 357 F.3d at 1243]. This means whether the limitations "prohibit a claimant from performing 'a wide range' of work at a given work level." *Id.* (emphasis by the court). If the nonexertional limitations significantly limit the claimant's basic work skills at the assigned exertional level, the ALJ must consult a vocational expert. *Id.*

*Jones*, 2010 WL 3749167 at * 6.  And,

> when there is a *combination* of exertional and nonexertional limitations, the grids "are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e)(2). If not, then the grids "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.* "Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under" the grids, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." *Id.* If the issue of occupational base erosion is complex, the ALJ "may use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e); *see also* S.S.R. 83-14 (stating that in complex situations, "the assistance of a vocational resource may be necessary").

*Watson v. Astrue*, 376 F. App'x 953, 957 n. 8 (11th Cir. 2010) (emphasis added).  Thus, a combination of both impairments requires the ALJ to

5

consult the grids, but if no finding of disability can be made based on those strength limitations alone, the ALJ uses the grids only as a framework to consider how much of the claimant's capacity is further eroded by considering available jobs and the claimant's nonexertional limitations. Because that determination can become complex, a VE or other specialist should be consulted. *Id.*; *see also Ladd v. Astrue*, 2011 WL 1485618 at * 8 (D.N.H. Apr. 19, 2011).

Finally, when a VE is consulted, specific SSA regulations, rulings, and guidelines (i.e., 20 C.F.R. Part 404, Subpart P, Appendix 2 (Guidelines)), fine-tune the consideration process. For example, "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quotes and cite omitted). Also, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* It is within that "fine-tuning" that Frazier claims

ALJ error. Doc. 8 at 8-15.

## II. BACKGROUND

Frazier, a long-time truck driver disabled by chronic back and other problems, doc. 6 at 17-20, sought disability beginning on April 26, 2006.[3] *Id.* at 15; 114. He pursued this administratively, and ultimately in front of an Administrative Law Judge (ALJ) who found disability only since December 28, 2008 (age 55).[4] *Id.* at 25. For the period between those dates the ALJ cited available jobs to deny coverage. *Id.* at 24.

In rejecting Frazier's claim that he could not work those jobs, the ALJ considered his medical evidence, specifically the inconsistencies between what Frazier claimed and what his medical record showed. *Id.* at 20-23. He also noted Frazier's age, along with his combined exertional and nonexertional limitations.[5] Following the above-illuminated process

---

3   Frazier was 52 at this time. Doc. 6 at 23.

4   By this date he was 55. Doc. 6 at 23.

5   More specifically, the ALJ found that Frazier had the RFC to perform light work with the following limitations: occasional squatting and climbing of ladders and scaffolds; occasional overhead reaching with the right and left arms; and he must avoid moderate exposure to unprotected heights and moving machinery. Doc. 6 at 19 (Finding 5). Due to his cervical spine fusion, Frazier's ability to look up and down was very restricted both in scope and in duration; he could not hold a flexed or extended neck position for very long. *Id.*

7

set forth in *Watson,* 376 F. App'x at 957 n. 8, he consulted a VE, found that his opinion aligned with the Dictionary of Occupational Titles (DOT), accepted that opinion, then concluded that, during the gap period Frazier could perform significant numbers of "light category" jobs. *Id.* at 23.

## III. ANALYSIS

Frazier insists the ALJ erred by misapplying established SSA guidelines and rulings, so the Court should remand his case to the SSA with direction to find that his disability commenced on April 26, 2006. Doc. 8 at 1. His limitations, he insists, placed his exertional level between a *light* exertional category (under which SSA Rule 202.14 would mandate a finding of "not disabled") and a *sedentary* exertional category (under which SSA Rule 201.14 would direct a finding of "disabled"), in which case Social Security Ruling (SSR) 83-12 guides the ALJ to a framework under which the ALJ should consider "the degree to which [Frazier's] remaining occupational base is further eroded by his nonexertional limitations," plus the "adjudicative weight" of his age, education, and work experience. Doc. 8 at 10.

Frazier's argument pivots on SSR 83-12. "Although SSRs do not

have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n. 6 (9th Cir. 2007). . . ." *Brandon v. Astrue*, 2010 WL 3781981 at * 10 n. 14 (N.D. Ga. Sep. 22, 2010). SSR 83-12 provides "Adjudicative Guidance" for adjudications where claimants fall between the grid cracks. Its "Policy Statement," for example, notes that

> [w]here an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious. [¶] Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

1983 WL 31253 at * 2. SSR 83-12 then elaborates:

> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> > a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a

finding of "Not disabled."

b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

1983 WL 31253 at * 2-3; *see also Ferrell v. Astrue*, 2010 WL 5575747 at * 5 (S.D. Ill. Dec. 17, 2010) (applying SSR 83-12 to conclude that "[w]hen the [claimant's] exertional RFC falls between two exertional levels and a finding of 'not disabled' is directed by the higher exertional level, then the ALJ should generally rely on vocational expert testimony.").

Citing that framework, Frazier emphasizes that portion of SSR 83-12 that says if his exertional capacity is "significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base of the lower rule and could justify [a] finding of 'Disabled." Doc. 8 at 11 (quoting SSR 83-12). Frazier argues that the "could" should be "should," here, because his combined exertional and

nonexertional impairments drop him down to too few (hence, not a "significant number of") jobs in the economy to support a "not disabled" finding. Doc. 8 at 11-15. Put another way, he is arguing that there are not a significant number of jobs in the economy, so a finding of "disabled" is demanded. *Id.*

That argument fails. Again, the VE opined that yes, Frazier could not perform his past work as a truck driver, but given his RFC, there were still significant numbers of "light work" jobs that he could perform. Doc. 6 at 55. Those light work jobs (the VE cited corresponding regulatory sections) were:

> Mail clerk, 2.09.687-026. It's light work, SVP 2, unskilled. My data shows approxiately 39,000 such jobs nationally, 1,500 State of Georgia. Night guard, 372.667-034, light, SVP 3, semiskilled, 86,000 nationally, 3,900 State of Georgia. Information clerk, 237.367-018, light, SVP 2, 55,000 nationally, 2,100 State of Georgia. I think those are fairly typical, Your Honor.

*Id.*

Frazier cites the VE's cross-examination concession that Frazier's skills from his truck-driving job would not transfer to the "night guard" job. Doc. 8 at 12; *see also* doc. 6 at 58-59. He also says the ALJ erroneously included the "Night Guard" in his ruling that Frazier could

still perform "the requirements of representative [light work] occupations as follows: Mail Clerk, Night Guard and Information Clerk." Doc. 6 at 24.

Those points are valid, but it does not follow, as Frazier now insists, that the ALJ's finding cannot be sustained merely "because a VE named a couple of unskilled light occupations in response to his hypothetical question." Doc. 8 at 13. Even omitting the "Night Guard" job, *thousands* of jobs that Frazier can do remain. *See* doc. 6 at 55 (citing, for the "Mail Clerk" job, 1500 in Georgia and 39,000 nationally; and for the "Information Clerk" job, 2100 in Georgia and 55,000 nationally). That is "significant" enough to sustain the ALJ's ruling. As in *Cooper v. Astrue*, 2011 WL 1118514 at *12 (S.D. OH. Jan. 25, 2011),

> [f]or purposes of making a disability determination, this number of regional jobs [was], as the ALJ found, significant. *See e.g., Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir.1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy); *Martin v. Comm'r*, 170 F. App'x 369, 375 (6th Cir.2006) ("870 jobs can constitute a significant number in the geographic region"); *Stewart v. Sullivan*, No. 89–6242, 1990 WL 75248, at *4 (6th Cir. June 6, 1990) (125 jobs in claimant's local geographic area is a significant number). Thus, contrary to [Frazier's] assertion, the occupational base was not so significantly eroded as to require or suggest a finding of disability.

*Cooper*, 2011 WL 1118514 at *12.

Here "[t]he VE's testimony established that there were a significant number of jobs in the economy to which [the claimant] could adjust, which is what the statute and regulations require at step five of the sequential evaluation. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c)." *Watson*, 376 F. App'x at 959; *see also West v. Astrue*, 2011 WL 559063 at * 6 (S.D. Ala. Feb. 8, 2011) ("[T]he ALJ properly utilized the testimony of a VE to determine whether the occupational base had been eroded due to Plaintiff's nonexertional limitations. Utilizing his vocational expertise, the VE conducted an individualized assessment and identified three jobs in the light classification existing in significant numbers in the national economy that Plaintiff can perform based upon his RFC, age and education. Accordingly, the ALJ did not err in using the grids as a framework, and in relying on the VE's testimony to determine that Plaintiff is not disabled.").

Finally, Frazier faults the ALJ for not asking the VE about "the vocational significance of Frazier's being 'closely approaching advanced age' for a period of time," and how that would impact on his ability to

perform information and mail-clerk type jobs. Doc. 8 at 14. In fact, the ALJ's hypothetical question to the VE explicitly assumed an individual of 52-55 years of age. Doc. 6 at 54. This argument, too, fails.

The Commissioner's decision should therefore be **AFFIRMED** and this case should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this  31st  day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA